UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WITHNEY JEANLOUIS,
A-Number: 077-830-730,

Petitioner,

v.

WARDEN OF THE MESA VERDE DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-06584-KES-EGC (HC)

**FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART THE PETITION FOR WRIT OF HABEAS CORPUS, AND TO DENY PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL**

(Docs. 1, 3)

[14-DAY DEADLINE]

## I. INTRODUCTION

Petitioner Withney Jeanlouis is an immigration detainee proceeding *pro se* with a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1.) Petitioner contends that his continued detention without a bond hearing before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment. Petitioner also moves for appointment of counsel. (Doc. 3.) Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), and that his detention remains constitutional. (Doc. 8.) For the reasons set forth below, the undersigned recommends that the petition (Doc. 1) be **GRANTED IN PART**, that Respondents be ordered to provide Petitioner an individualized bond hearing before an immigration judge, and that the motion for appointment of counsel (Doc. 3) be **DENIED**.

## II. BACKGROUND

### A. Petitioner's Immigration and Criminal History

Petitioner is a native and citizen of Haiti who entered the United States without inspection on an unknown date. (Doc. 8-1 at 2, 4.) He asserts that he has lived in the United States for more than thirty-two years, attended school from kindergarten through twelfth grade in Miami, Florida, holds a high school diploma, has three adult United States citizen siblings, and has no remaining family in the Bahamas. (Doc. 1 at 5-6.)

On May 22, 2023, Petitioner was convicted in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, on eight counts, including trafficking in cocaine in violation of Fla. Stat. § 893.135(1)(B)1 and multiple counts of sale, manufacture, or delivery of a controlled substance in violation of Fla. Stat. § 893.13(1)(A)1 and § 893.13(1)(A)2. (Doc. 8-2 at 1-2.) He was sentenced to a concurrent term of three years' imprisonment. (*Id.* at 4-5.) His criminal history also reflects controlled-substance arrests and convictions beginning in 2009. (*Id.* at 20-43.)

On October 18, 2025, U.S. Immigration and Customs Enforcement ("ICE") identified Petitioner at a Florida Department of Corrections facility and lodged a detainer. (Doc. 8-1 at 2.) On October 21, 2025, the Department of Homeland Security ("DHS") issued a Notice to Appear to Petitioner, and served it on October 29, 2025, charging Petitioner as inadmissible under Immigration and Nationality Act §§ 212(a)(6)(A)(i), 212(a)(7)(A)(i)(I), and 212(a)(2)(C). (*Id.* at 4-7.) Petitioner states that his ICE custody began on October 30, 2025. (Doc. 1 at 11.) Respondents state only that DHS detained him "[i]n October 2025." (Doc. 8 at 1.) On any of these dates, Petitioner has been continuously detained by ICE for more than ten months.

On May 11, 2026, an immigration judge found Petitioner inadmissible on all three charged grounds, granted DHS's oral motion to pretermit his Form I-589 application, and ordered him removed to the Bahamas. (Doc. 8-3 at 3-6.) DHS waived appeal; Petitioner reserved appeal, with an appeal deadline of June 10, 2026. (*Id.* at 6.)

On June 8, 2026, before the appeal period expired, the immigration judge granted DHS's motion to amend the final order of removal to designate the Bahamas with Haiti as an alternative and stated that the court would "sua sponte reopen proceedings to address Respondent's fear of

returning to Haiti." (Doc. 8-3 at 1-2.) Both parties reserved appeal from that order. (*Id.* at 2.) Respondents represent, citing the EOIR automated case information system, that a final hearing is set for September 4, 2026. (Doc. 8 at 2 & n.1.)

Petitioner has never received a bond hearing or any individualized custody determination before a neutral decisionmaker. (Doc. 1 at 5, 8–9.) Respondents do not contend otherwise, and state that Petitioner "has not asked an IJ to review DHS's determination that he is subject to mandatory detention." (Doc. 8 at 2.)

**B. This Action**

Petitioner filed the instant petition on August 18, 2026, together with a motion for appointment of counsel under 18 U.S.C. § 3006A. (Docs. 1, 3.) On August 20, 2026, the undersigned ordered Respondents to show cause why the petition should not be granted, directed that any response be filed within fourteen days of service, and permitted Petitioner to file a traverse within seven days of the filing of the response. (Doc. 7.)

Respondents filed a response, together with exhibits, on August 27, 2026. (Docs. 8, 8-1, 8-2, 8-3.) Petitioner's traverse is not due until September 3, 2026, and none has been filed thus far. (*See* Doc. 7.) Nonetheless, the undersigned finds the matter suitable for resolution on the present record. Petitioner is not prejudiced as these findings and recommendations recommend granting the relief Petitioner principally seeks, and Petitioner retains the opportunity to be heard through objections. To the extent Petitioner timely files a traverse, the undersigned will consider it and may amend these findings and recommendations as necessary.

**III. DISCUSSION**

**A. Jurisdiction**

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020). The Supreme Court has confirmed that federal courts have jurisdiction to review a constitutional challenge to a noncitizen's detention. *See*

*Demore v. Kim*, 538 U.S. 510, 517 (2003). Petitioner is detained at the Mesa Verde Detention Center in Bakersfield, California, within this judicial district, and he challenges the constitutionality of his detention. Jurisdiction is therefore proper.

Further, the Supreme Court in *Demore* did not foreclose a Due Process Clause challenge where detention extends well beyond the period the Court contemplated. *See Demore* at 532-33 (Kennedy, J., concurring) (a detainee "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified"). Petitioner asks the Court whether the Due Process Clause entitles him to a hearing or release, and that question remains within the Court's jurisdiction.

**B. Petitioner's Detention is Governed by 8 U.S.C. § 1226, Not § 1231**

As an initial matter, although the parties do not dispute the point, the undersigned addresses whether section 1226 applies because the record contains a removal order. Detention "pending a decision on whether the alien is to be removed from the United States" is governed by 8 U.S.C. § 1226. Detention under section 1231 begins only once the removal period commences, which requires an administratively final order of removal. 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 1241.1. An order does not become final while the time for appeal to the Board of Immigration Appeals remains open and appeal has been reserved. 8 C.F.R. § 1241.1(c).

Here, the May 11, 2026 order never became administratively final. Petitioner reserved appeal, the appeal deadline was June 10, 2026, and the immigration judge reopened proceedings on June 8, 2026, two days before that deadline. Reopening in any event vacates the prior order and restores the case to a pre-final posture. Removal proceedings are now pending, with a merits hearing scheduled. Section 1226 therefore supplied, and continues to supply, the authority for Petitioner's detention throughout the period at issue.

**C. The Undersigned Assumes Without Deciding That Section 1226(c)(1)(A) Applies**

Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A) because his Florida cocaine trafficking conviction renders him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II). (Doc. 8 at 2.) Respondents' sole authority for the categorical match is an out-of-circuit decision. (*Id.* (citing *United States v. Rowe*, 143 F.4th 1318, 1330 (11th Cir.

2025)).) Further, Respondents do not address whether Florida's definition of cocaine is coextensive with the federal schedules under *Mellouli v. Lynch*, 575 U.S. 798 (2015), and Petitioner has not raised the question, although Petitioner, in a preprinted form, asserts that "[t]here is no statutory or regulatory pathway for Petitioner to seek a bond hearing" under section 1226(c) (*see* Doc. 1 at 5 ¶ 21).[1]

The undersigned need not resolve it. Petitioner's claim is that his detention has become unconstitutionally prolonged regardless of the governing subsection, and that claim is properly resolved on as-applied due process grounds. The undersigned therefore assumes without deciding that section 1226(c)(1)(A) reaches Petitioner and proceeds to the constitutional question.

**D. The Availability of a *Joseph* Hearing Does Not Bar Relief**

To the extent Respondents contend that any challenge to Petitioner's classification as subject to mandatory detention must be raised through a "*Joseph* Hearing" before the immigration judge, and that Petitioner has failed to exhaust that remedy (Doc. 8 at 2 ("he has not shown that he falls outside § 1226(c)'s mandatory-custody scope")), that argument is misdirected. A *Joseph* Hearing addresses only whether a detainee is properly included within a mandatory-detention category or whether the government is substantially likely to establish the mandatory-detention grounds. *See Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999). It does not provide any individualized assessment of flight risk or dangerousness, and it affords no bond determination.

Petitioner does not appear to contest that his convictions are a proper predicate for detention under section 1226(c). Instead, Petitioner argues that the duration of his detention without any individualized bond determination now offends due process. That claim does not depend on the classification question a *Joseph* Hearing resolves, and exhaustion of that administrative remedy is therefore not required.

/ / /

/ / /

[1] Any dispute over whether Petitioner is properly included within section 1226(c) is in the first instance for the immigration judge on a Joseph Hearing. *See Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999). Nothing in these Findings and Recommendations forecloses Petitioner from seeking that relief.

### E. Petitioner's Continued Detention Without an Individualized Bond Hearing Violates Due Process

The Fifth Amendment's Due Process Clause provides that no person shall be "deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law" in removal proceedings, *Reno v. Flores*, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). At the same time, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531.

In *Demore*, the Supreme Court sustained such detention under section 1226(c) on the understanding that it lasts only "for the brief period necessary for [the noncitizen's] removal proceedings," relying on data reflecting detention averaging approximately a month and a half, and approximately four months in the minority of cases involving an appeal to the Board of Immigration Appeals. *Demore*, 538 U.S. at 513, 529-31. As discussed above, *Demore* does not, however, foreclose a Due Process Clause challenge where detention extends well beyond the period the Court contemplated. *See id.* at 532-33 (Kennedy, J., concurring) (a detainee "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified").

Under section 1226(c), there is no bright-line rule fixing the point at which detention becomes unreasonable. *See Jennings v. Rodriguez*, 583 U.S. 281, 297-303 (2018); *see also Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *2 (N.D. Cal. Jan. 25, 2019). Where a Due Process Clause challenge is presented, courts evaluate the claim under the balancing framework of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), weighing the private interest at stake, the risk of erroneous deprivation of that interest, and the Government's interest. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *Diep v. Wofford*, No. 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal. Feb. 25, 2025). Applying that framework to immigration detention, the Ninth Circuit has identified as relevant the duration of detention to date, the anticipated duration of future detention, delays attributable to either party, and the likelihood that

the proceedings will result in a final removal order. *Rodriguez Diaz*, 53 F.4th at 1207-08.

The end of Petitioner's detention is not reasonably foreseeable. Civil immigration detention is nonpunitive and is ordinarily justified only by the twin purposes of preventing flight and protecting the community pending removal. *Zadvydas*, 533 U.S. at 690. Detention that is not reasonably related to those purposes, including detention that has become prolonged and lacks a determinable end, raises serious constitutional concerns. *Id.* at 690-91. Respondents correctly observe that detention under section 1226(c) "has a definite termination point: the conclusion of removal proceedings." *Jennings*, 583 U.S. at 304 (quotation marks omitted). But that endpoint is not near or reasonably foreseeable. Having been detained for at least ten months, Petitioner's immigration case remains pending. In accordance with *Jennings*, the undersigned does not treat any fixed period of detention under section 1226(c) as a bright line. Nonetheless, given at least ten months of detention here with no reasonably foreseeable endpoint, the *Mathews* balancing test now favors an individualized hearing.

i. <u>Private Interest.</u>

The first *Mathews* factor asks the weight of the private interest affected. Petitioner's interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). Petitioner has now been detained for at least ten months, in a secure facility, without any individualized determination that his confinement is warranted. This factor weighs in Petitioner's favor.

ii. <u>Risk of Erroneous Deprivation.</u>

The second factor asks the risk of an erroneous deprivation under the procedures used and the probable value of additional safeguards. Several considerations bear on that inquiry: the duration of detention, whether detention is likely to continue and for how long, and the reasons for delay and whether they are attributable to the government or the detainee.

The most important consideration is duration. Petitioner's detention has substantially exceeded the "brief period" contemplated in *Demore*, 538 U.S. at 513, and has passed the six-month mark that courts have treated as the point at which detention becomes prolonged, *see Rodriguez Diaz*, 53 F.4th at 1199 n.6.

Nothing in the record suggests Petitioner's removal proceedings are near resolution. The reasons for the delay reinforce the point. Removal was ordered on May 11, 2026, approximately six and a half months into Petitioner's detention. The proceedings reopened not because of any dilatory conduct by Petitioner, but because DHS moved to amend its own final order of removal, prompting the immigration judge to reopen the removal proceedings sua sponte. (Doc. 8-3 at 1–2.) Detention has been extended by roughly four additional months on a course DHS itself set in motion. Respondents' response does not address the length of Petitioner's detention at all, offers no explanation for it, and does not attribute any portion of it to Petitioner.

The procedural protection Petitioner seeks—a single individualized bond hearing before an immigration judge—is the ordinary mechanism by which the immigration system assesses danger and flight risk, and it is available to noncitizens detained under section 1226(a) as a matter of course. *See* 8 C.F.R. § 1003.19. Its probable value is high precisely because Petitioner has received nothing comparable. He has had no opportunity, before any neutral decisionmaker, to be heard on whether his confinement serves any purpose that conditions of supervision could not serve. Petitioner has a lengthy criminal history, which may very well justify the continued the detention of Petitioner. Nonetheless, those considerations are to be decided by the immigration judge in an individualized bond hearing. This factor weighs in Petitioner's favor.

Further, the scheduled September 4, 2026 merits hearing does not alter this conclusion. A hearing on the merits of removability and relief is not a custody determination, and a decision adverse to Petitioner would be followed by an appeal period and, potentially, further administrative and judicial review. A due process violation is not cured by the prospect of a merits ruling that resolves nothing about the justification for Petitioner's continued confinement.

iii. <u>Government's Interest.</u>

The Government has a legitimate and weighty interest in ensuring a noncitizen's appearance at removal proceedings and in protecting the public from noncitizens who pose a danger. *Rodriguez Diaz*, 53 F.4th at 1208. The undersigned does not discount that interest, and Petitioner's criminal history is not trivial.

But the key Government interest at stake here "is not the continued detention of Petitioner,

but the government's ability to detain him *without a bond hearing*." *Zagal-Alcaraz v. ICE Field Office Dir.*, No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020). Providing a single individualized hearing imposes minimal fiscal and administrative burden, and it does not compel Petitioner's release. If the Government establishes that Petitioner is a danger or a flight risk, his detention will continue. The Government's interest in avoiding that limited process does not outweigh Petitioner's substantial liberty interest after approximately ten months without review. The question of whether continued detention is warranted is committed to the immigration judge.

Weighing the factors, the undersigned finds that Petitioner's continued detention under section 1226(c), for a period of at least ten months without any individualized determination by a neutral decisionmaker, violates the Due Process Clause. To the extent Petitioner seeks immediate release, such relief is not warranted. The constitutional defect identified above is procedural: Petitioner has been denied a hearing, not shown to be entitled to release. The appropriate remedy is to supply the missing process of a bond hearing. Should the immigration judge conclude that Petitioner's continued detention is justified, no constitutional violation will remain.

**F. Motion for Appointment of Counsel (Doc. 3)**

Petitioner moves for appointment of counsel under 18 U.S.C. § 3006A. (Doc. 3.) There is no constitutional right to appointed counsel in a federal habeas corpus proceeding. *Luna v. Kernan*, 784 F.3d 640, 642 (9th Cir. 2015) (citing *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007)). Appointment is discretionary and appropriate where "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B).

Here, Petitioner's filings demonstrate an adequate ability to articulate his claims, and the legal issues presented are not complex such that denial of counsel would amount to a denial of due process. *See LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987). Accordingly, the undersigned recommends that the motion for appointment of counsel (Doc. 3) be DENIED.

**IV. CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (Doc. 1) be **GRANTED IN PART** as to

Petitioner's prolonged detention claim;

2. Within ten (10) days of any order adopting these findings and recommendations, Respondents be ORDERED to provide Petitioner an individualized bond hearing before an immigration judge. *See Lopez v. Garland*, 631 F. Supp. 3d 870, 882 (E.D. Cal. 2022) (identifying a bond hearing as the appropriate remedy, rather than release). At the hearing, the Government must establish "by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." *Id.* (citations omitted). If Respondents fail to provide Petitioner with a bond hearing as required by the Court's order, Petitioner should be immediately released from detention;

3. The petition be **DENIED IN PART** to the extent Petitioner seeks immediate release; and,

4. Petitioner's motion for appointment of counsel (Doc. 3) be **DENIED**.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to

Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated: **September 2, 2026**

Erin Sung Castillo

UNITED STATES MAGISTRATE JUDGE